UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JIMMY DEAN LIVESAY,              )
                                )
        Petitioner,             )
                                )        Nos.  3:19-CV-390-TAV-DCP
v.                              )                3:18-CR-36-TAV-DCP
                                )
UNITED STATES OF AMERICA,       )
                                )
        Respondent.             )

## REPORT AND RECOMMENDATION

United States District Judge Thomas A. Varlan has referred [Doc. 19] this matter to the undersigned for a report and recommendation regarding disposition of Petitioner's claim that his former counsel failed to file a requested appeal or failed to make a reasonable effort to discover Petitioner's desire to file an appeal.[1]  The undersigned conducted an evidentiary hearing on March 27, 2023.  Assistant United States Attorney Samuel Fitzpatrick ("AUSA Fitzpatrick") appeared on behalf of the Government.  Attorney Ruth Thompson Ellis ("Attorney Ellis") appeared on behalf of Petitioner, who was also present.  For the reasons set forth herein, the Court **RECOMMENDS** that the District Judge **DENY** the sole remaining claim in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Petition" or "Petition") [**Doc. 1**].

## I.      BACKGROUND

On June 5, 2018, Petitioner was initially charged in a superseding indictment with conspiracy to distribute 50 grams or more of methamphetamine [Case No. 3:18-cr-36 ("Crim.

---

[1] Unless otherwise indicated, all document citations refer to the civil case docket, Case No. 3:19-cv-390.

Docket"), Doc. 24].[2]   On June 14, 2018, Petitioner appeared before the Court for his initial appearance/arraignment, and the Court appointed Attorney Russell T. Greene ("Attorney Greene") on his behalf [Crim. Docket, Docs. 63, 68].  Subsequently, Petitioner was charged with the same offense in a second superseding indictment that was filed on August 8, 2018 [Crim. Docket, Doc. 154].

Prior to the filing of the second superseding indictment, Petitioner signed a Plea Agreement [Crim. Docket, Doc. 125].  Following the filing of the second superseding indictment, Petitioner signed a Second Amended Plea Agreement (the "Plea Agreement") on August 15, 2018 [Crim. Docket, Doc. 160], whereby he agreed to plead guilty to Count One of the second superseding indictment, which charged conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)  [*Id.* ¶ 1].[3]   The Plea Agreement states that the punishment to which Petitioner would be exposed as a result of his guilty plea would be "a minimum mandatory term of imprisonment of ten years up to life" [*Id.*].  Paragraph 9 of the Plea Agreement provides, in relevant part, as follows:

> 9. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

---

[2]     As necessary, the Court takes judicial notice of the records filed in the underlying criminal proceeding.  "It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence." *ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 n.1 (E.D. Mich. 2018) (citation omitted) (quoting *Gerritsen v. Warner Brothers Ent. Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015)).

[3]     During the evidentiary hearing, Attorney Greene and Attorney Ellis both referenced three plea agreements in this case.  A review of the record reveals the original plea agreement [Crim. Doc. 125], a supplement to the original plea agreement [Crim. Doc. 126], and a second, amended plea agreement [Crim. Doc. 160].

2

a) The defendant will not file a motion for downward departure or variance or a direct appeal of the defendant's convictions or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

[*Id.* ¶ 9].

Petitioner proceeded before Judge Varlan on September 4, 2018, for his change of plea hearing [Crim. Docket, Doc. 199]. During the change of plea hearing, Judge Varlan asked whether Petitioner understood paragraph 9 of the Plea Agreement [Crim. Docket, Doc. 762 pp. 8–9]. The following exchange occurred:

The Court: Next, I want to look at certain provisions of your plea agreement with you. First, do you understand, under Paragraph 3G, you are agreeing that – to be responsible for at least 50 grams but less than 150 grams of actual methamphetamine?

The Defendant: Yes, Your Honor.

The Court: Do you also understand – now I'm looking at Paragraph 9 – that your plea agreement contains provisions under which you are waiving the right to appeal or collaterally attack your sentence?

The Defendant: Yes, I am, Your Honor.

The Court: Paragraph 9A provides that you agree not to file a direct appeal of your conviction or sentence. Correct?

The Defendant: Correct, Your Honor.

The Court: And do you understand the only exception to this waiver of direct appeal is you retain the right to appeal a sentence imposed

3

above the sentencing Guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater?

The Defendant: Yes, Your Honor.

The Court: As part of this waiver, do you understand you're waiving the right to appeal the Court's determination as to whether your sentence would be consecutive or partially concurrent to any other sentence you might receive?

The Defendant: Yes, Your Honor.

The Court: Next, paragraph 9B provides you knowingly and voluntarily waive the right to file any motions or pleadings pursuant to 28 United States Code section 2255 or to collaterally attack your conviction or resulting sentence. Do you understand this?

The Defendant: Yes, Your Honor.

The Court: And do you understand the only exception to this waiver is you retain the right to raise by way of collateral review, under Section 2255, claims of ineffective assistance of counsel or prosecutorial misconduct?

The Defendant: Yes, I do, Your Honor.

[*Id*.]. After the Court explained the impact of Petitioner pleading guilty, Petitioner testified that he still wished to plead guilty in his case [*Id*. at 16].

Based on the drug quantity in the Plea Agreement, the presentence investigation report ("PSR") calculated Petitioner's base level as 30 under U.S.S.G. § 2D1.1 [Crim Docket, Doc. 278 ¶ 72 SEALED]. However, the PSR reflected further adjustments based on Petitioner's career offender status under U.S.S.G. §4B1.1(b)(1), which increased the offense level to 37, and Petitioner's acceptance of responsibility, which then reduced the offense level to 34 [*Id*. at ¶¶ 78–81]. Based on a total offense level of 34 and Petitioner's calculated criminal history category of IV, the PSR calculated his sentencing guideline range as 262 to 327 months' imprisonment [*Id*. ¶ 122]. No objections to the PSR were filed [Crim. Docket, Docs. 284 & 293].

4

The Court sentenced Petitioner on April 17, 2019 [Crim. Docket, Doc. 559]. At the sentencing hearing, Petitioner testified that he understood the offense described in the Count One required a sentence of at least ten years' imprisonment, up to life [Crim. Docket, Doc. 820 p. 3]. Petitioner further testified that he understood that he was classified as a career offender under Section 4B1.1 of the Sentencing Guidelines and that such classification impacted the sentence he would receive [*Id.*]. Petitioner also confirmed the predicate offenses for his career offender status [*id.* at. 4–5], after which time, the Court announced its finding that he should be sentenced as a career offender [*Id.* at 5]. The Court then addressed the Government's motion for downward departure and granted the motion, taking into consideration Petitioner's substantial assistance [*Id.* at 12–13]. While noting the Government's recommendation of a four-level departure, which correlated to a low-end, revised guideline of 168 months, the Court went slightly beyond the recommendation and imposed a sentence of 165 months [*Id.* at 13]. After advising Petitioner that that he may have the right to appeal the imposed sentence, the Court instructed that a Notice of Appeal must be filed within fourteen days of entry of judgment and that Petitioner could request that the Clerk of Court prepare and file the notice [*Id.* at 16]. When provided the opportunity, Petitioner did not raise any objections to the pronounced sentence [*Id.*]. At the conclusion of the hearing, the Court specifically noted that because of Defendant's cooperation, he was given a significant reduction in his sentence of over eight years [*Id.* at 17].

On October 3, 2019, Petitioner filed his § 2255 Petition [Doc. 1], asserting several claims of ineffective assistance of counsel by Attorney Greene based on the following: (1) failure to advise Petitioner about the application of the Sentencing Guidelines or inform him of any potential sentence enhancement; (2) failure to review relevant information with Petitioner regarding the plea agreement; (3) failure to move to withdraw Petitioner's guilty plea; (4) failure to investigate; (5) failure to make objections to the PSR; and (6) failure to file a direct appeal. In a supplement filed

5

on September 21, 2020 [Doc. 3], Petitioner raised additional claims of evidentiary and record errors. The Court denied all of Petitioner's claims, with the exception of Petitioner's claim regarding his request to file an appeal, which was referred to the undersigned for an evidentiary hearing [Doc. 19].

Petitioner contends that, at the conclusion of his sentencing hearing, he immediately directed Attorney Greene to file an appeal, because his sentence was approximately twice what counsel had advised him, and Attorney Greene responded that he would "take care of [the] appeal" [Doc. 1 p. 5]. He maintains that several family members confronted Attorney Greene after the hearing about the "unexpect[ed] long prison term and [to] make sure counsel was filing an appeal" and also that Attorney Greene "acknowledged [] [Petitioner] wanted an appeal and [] advised family members that he [] would do the appeal for [Petitioner]" [*Id.*; *see also id.* at 16–20 (containing the affidavits of Petitioner's family members)]. Petitioner further contends that he previously informed Attorney Greene that he desired to appeal if he received a sentence of more than 10 years [*Id.*].

On December 19, 2022, the District Judge referred Petitioner's remaining claim, regarding his request to file an appeal, to the undersigned for appointment of counsel and to conduct the evidentiary hearing [Doc. 19]. On January 3, 2023, the undersigned appointed Attorney Ellis to represent Petitioner [Doc. 21]. The Court conducted the evidentiary hearing on March 27, 2023 [Doc. 27].

## II.    SUMMARY OF THE TESTIMONY[4]

The following individuals testified during the evidentiary hearing: Petitioner, Crystal Livesay, Rebecca Helmick, Cynthia Brooks, Linda Mullins, and Attorney Greene.  The Court will summarize their testimony below.

### A.    Petitioner

Petitioner testified that during Attorney Greene's representation of him, there were discussions about the ten-year mandatory minimum sentence but that Attorney Greene told him that he could get him fifty percent of the time under the mandatory minimum, if he cooperated with the Government.  Petitioner stated that he expected 46 to 57 months as that is what Attorney Greene specifically told him and that he communicated to his family his expectation to receive below the mandatory minimum.  Petitioner initially testified that he first discussed an appeal with Attorney Greene weeks before sentencing, though he was not able to recall exactly what was said because it had been a long time.  Shortly thereafter, Petitioner testified that he thought he and Attorney Greene discussed the direct appeal after the sentencing.

Next, Petitioner testified that Attorney Greene never met with him to go over the PSR because Petitioner was housed in Ocilla, Georgia, at the time.  However, he later clarified on cross-examination that he had a copy of the PSR to review and that he talked to Attorney Greene on the phone, stating he wanted to object to it due to the enhancement in the report.  Petitioner did recall meeting with Attorney Greene to review the Plea Agreement.  Petitioner testified that when Attorney Greene brought the Plea Agreement to him, Attorney Greene stated, "If you sign this

---

[4]     At the suggestion of Attorney Ellis and without objection from the Government, the Court allowed Attorney Greene to be examined first.  While Rule 611 of the Federal Rules of Evidence allows the Court to exercise control over the order of witness presentation, the Court notes that Petitioner carries the burden of proof on his claim of ineffective assistance of counsel, and although the order of examining witnesses was taken out of the normal order, the parties had a full opportunity to present evidence for the Court's consideration during the hearing.

7

Plea Agreement, you will not be enhanced." After briefly discussing his recollection of the reasons leading up to the final version of the Plea Agreement, Petitioner testified that at some point, he told Attorney Greene that he wanted to withdraw his plea, but Attorney Greene told him the judge would put him in prison for the rest of his life. Petitioner further testified that Attorney Greene did not go over the waiver-of-appeal-rights language in the Plea Agreement with him. After hearing Judge Varlan impose his sentence of 165 months, Petitioner stated that he asked Attorney Greene to do a direct appeal because he received twice the amount of time that Attorney Greene said he would get and that, in response, Attorney Greene said he would take care of it.

On cross-examination, Petitioner was questioned about his change of plea hearing. While he recalled Judge Varlan asking if he understood that the Plea Agreement contained an appeal waiver, Petitioner explained that the only reason he agreed with anything Judge Varlan said was because Attorney Greene had threatened him from pulling his plea by stating he would be put in prison for life. At one point during cross-examination, Petitioner testified that Attorney Greene did explain the terms of the Plea Agreement to him but stated he did not agree to the term stating he would not file a direct appeal. But later, Petitioner denied that Attorney Greene explained to him that the Plea Agreement contained an appeal waiver. In reviewing the transcript from his change of plea hearing, Petitioner acknowledged that he testified under oath that he was asked whether his lawyer explained the terms of the agreement to him and that he responded, "He has, Your Honor." He further acknowledged that the Court reviewed paragraph 9(a), providing he agreed not to file a direct appeal of his conviction or sentence and that he responded, "Correct, Your Honor." Petitioner agreed that he did not tell Judge Varlan that he was interested in appealing at any point during his change of plea hearing.

In discussing his phone conversation with Attorney Greene concerning his PSR, Petitioner stated that he told Attorney Greene that he wanted to object to the report. He explained that

8

Attorney Greene told him that he would not be enhanced if he signed the Plea Agreement, but that "they enhanced me on my presentence." He stated Attorney Greene did not go to meet with him about the PSR and that they did not read and discuss the PSR on the phone. Petitioner stated Attorney Greene told him they would go over the PSR before sentencing but that it never happened. In reviewing the transcript from his sentencing hearing, Petitioner acknowledged that he testified under oath that he had received the PSR and had the opportunity to read and discuss the report with his attorney. He further acknowledged that at the hearing, Judge Varlan told him that any notice of appeal had to be filed within fourteen (14) days. Petitioner was asked whether he recalled Judge Varlan telling him that the Clerk of Court would file a notice of appeal on his behalf, if he so requested. Petitioner responded that he did not remember exactly what was said but stated that if it was reflected on the docket or the sentencing sheet, then he agreed to it.

Petitioner was then questioned about the assertion he made in his § 2255 motion that Attorney Greene told Petitioner and other family members that he would not receive a sentence of more than ten years. Petitioner responded, "[Attorney Greene] promised me that I wouldn't be enhanced, and that would put my guideline to 46 to 57 months is what [Attorney] Greene promised me." With regard to any communication with Attorney Greene following the sentencing hearing, Petitioner was asked whether he made any phone calls to Attorney Greene to check on the appeal that he said he asked him to file. Petitioner responded that he was in transit and could not use the phone. On redirect examination, however, Petitioner stated that he was able to use the phone while in transit and that in Atlanta, Georgia, he tried to called Attorney Greene but did not get an answer. He added that his wife also tried to call Attorney Greene, but she did not get a response. Petitioner testified that he sent a letter to Attorney Greene asking for a status update about a month or so after

his sentencing.[5]  He stated that he did not recall the specific date of the letter, but he knew that he only had a year to file a § 2255 motion because he had found out Attorney Greene did not file the appeal.  When asked specifically what he said in that letter, Petitioner responded, "That's all," and confirmed that he only said, "status update."

Finally, on redirect examination, Petitioner testified that at the time he directed Attorney Greene to file an appeal, he believed he had a right to have an appeal filed.  The basis for his belief was that when he first met with Attorney Greene, he asked him for the discovery, but Attorney Greene told him that he was guilty and that "he wasn't getting one."  He added that Attorney Greene later presented him with a plea and talked him into it, telling him there was no need to get into the discovery as he was guilty because it was a conspiracy.  Petitioner testified that when he asked Attorney Greene what the plea bargain was about, Attorney Greene went over it with him and that "it was a mandatory minimum of ten to life."  Petitioner told Attorney Greene that was a lot of time and that if he could see his discovery, then he would know more about what was happening.  Petitioner testified that Attorney Greene responded, "Well, you just sign it.  They won't enhance you . . . you can make a deal with the government and I can get you 50 percent below the mandatory minimum."  Petitioner reiterated that immediately after sentencing, he asked Attorney Greene if he could do a direct appeal because he received twice as much time as Attorney Greene said he was going to get and that Attorney Greene never came to speak with him about an appeal and would not answer the phone.

---

[5]     Petitioner noted that he arrived at the prison on May 20, 2019.

10

### B. Crystal Livesay[6]

Crystal Livesay, Petitioner's wife, testified that she spoke to Attorney Greene at Petitioner's sentencing. She related that when she asked Attorney Greene why he lied to them, Attorney Greene apologized for lying and asked whether they wanted him to file an appeal for Petitioner, to which she replied, "Yes." She explained that the sentence range was not what she expected as Attorney Greene had told Petitioner that he would not get over ten years.

### C. Rebecca Helmick

Rebecca Helmick, Petitioner's sister-in-law, testified that she was also present at Petitioner's sentencing hearing and that the sentence was substantially greater than she had expected. Ms. Helmick detailed that in a conversation with Attorney Greene, Ms. Livesay got mad because Petitioner "got more time than he was supposed to." Ms. Helmick stated that Attorney Greene apologized and that Ms. Livesay then asked Attorney Greene, "Well, are you going to tell them you lied or whatever?" to which he responded, "This conversation is over."

### D. Cynthia Brooks

Cynthia Brooks, Petitioner's mother, testified that she was present at the sentencing of Petitioner and that the sentence he received was substantially more than she had expected. Ms. Brooks further testified that she was also present during a conversation with Attorney Greene when Ms. Livesay addressed him, and Attorney Greene stated that he was sorry and that "we're going to appeal this."

---

[6]    By stipulation, the parties agreed not to elicit on direct or cross-examination of Ms. Livesay any information concerning her phone conversation with Attorney Greene.

### E.  Linda Mullins

Linda Mullins, Petitioner's aunt, was also present during Petitioner's sentencing as well as the conversation with Attorney Greene following the sentencing.  She testified that while she could not remember exactly everything that was said, Attorney Greene stated that he was going to file an appeal.  Ms. Mullins added that Ms. Livesay was very upset.

### F.  Attorney Greene

Attorney Greene testified that he has been practicing law for twenty-seven (27) years and that he is familiar with his responsibility in a criminal case when a client instructs him to file a notice of appeal.  He explained that his responsibility would include immediately talking to his client about the basis for the appeal, the notification to the Court, and preparation of the notice of appeal.  Attorney Greene further testified that after speaking with client, if the client instructed him to file the appeal, he would have the responsibility of doing so, with the exception of a frivolous appeal.

With respect to Petitioner, Attorney Greene stated that he did not remember Petitioner ever saying "appeal" during the sentencing hearing.  He explained that if Petitioner had directed him immediately after the sentencing to file an appeal, he would have first approached the clerk in the courtroom and provided notification that he would be filing an appeal.  He further explained that in such cases, he would talk to his client about the basis for an appeal, and afterwards, if the client instructed that an appeal be filed, he would file an appeal within fourteen (14) days if there was merit to it and if he and the client agreed on all matters to be appealed.  He gave some examples of meritorious issues with regard to sentencing, such as a sentence outside the Guidelines range and prosecutorial misconduct.  In cases where he felt an appeal was frivolous, Attorney Greene stated that he has asked the clerk to file a notice of appeal on his client's behalf.

Attorney Greene was then asked about his standard practice in counseling clients about their appeal rights. He stated that it comes up every time for clients like Petitioner who plead guilty because the matter of their appeal rights is contained in the plea agreement. Attorney Greene explained that he reviews each appellate right, the ways of collaterally attacking the sentence, and what the client is giving up by entering into a plea agreement. He testified that he reads the plea agreement verbatim to ensure the client knows what he is pleading to. He said it was important that criminal defendants understand there is an appeal waiver in the plea agreement because they are relinquishing significant rights when they sign a plea agreement, including the right to a trial, and he explains each appellate right so they understand what they are giving up by not going to trial.

Next, Attorney Greene reviewed Petitioner's Plea Agreement. Attorney Greene testified that before Petitioner signed the Plea Agreement, he would have discussed paragraphs 9 and 9(a)[7] with him and provided examples, because it is legalese and he wants his clients to understand exactly what they are giving up. He detailed examples of what would fall within those sections as actionable matters that he would discuss with clients, including scenarios of ineffective assistance of counsel and prosecutorial misconduct. He added that a sentence outside of the guideline range would also be actionable. Attorney Greene also confirmed that he would have discussed paragraph 5(c) of the Plea Agreement with Petitioner, which provides that any estimates or predictions by defense counsel regarding any potential sentence is not binding,[8] reiterating that he reads the entire

---

[7]   *See supra* at pp. 2–3.

[8]   Paragraph 5(c) of the Plea Agreement provides, in relevant part, as follows:

> Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea.

13

plea agreement verbatim when discussing it with a client. Attorney Greene further explained that as he reads the plea agreement to his client, he stops and asks whether he understands what each paragraph means and then goes into detail before proceeding to the next paragraph. He stated that he does the same thing with each paragraph to ensure his clients are making an informed decision.

When discussing the Plea Agreement with Petitioner, Attorney Greene testified that Petitioner did not express an interest in filing an appeal, and he added that he did not recall an appeal ever being raised during his representation of Petitioner. After the signing of a plea agreement, Attorney Greene testified that his standard practice for counseling clients about the PSR is to go through the report with them line by line to ensure its accuracy. In doing so with Petitioner, Attorney Greene stated that he did not recall Petitioner saying anything about an appeal. He confirmed that at Petitioner's sentencing hearing, he was sentenced to 165 months imprisonment, which he stated was far below Petitioner's initial guideline range as well as below his adjusted guideline range of 168 months. Attorney Greene testified that he did not speak to Petitioner after the sentencing hearing and did not recall talking with him at all from that point on.

When asked whether Petitioner directed him to file an appeal immediately after the sentencing hearing, Attorney Greene stated that he did not recall Petitioner saying anything at all. He recalled Petitioner was at the table and then taken away, as was the usual practice, and he then went to the clerk's stand to wait for documents to be prepared for his signature. Attorney Greene testified that, contrary to Petitioner's assertion in his § 2255 motion, he does not recall telling Petitioner that he would take care of an appeal. He stated that that was not something he would say off the cuff, explaining that if he were to say he would take care of an appeal, he would have

[Crim. Docket, Doc. 160 ¶ 5(c)].

14

to review with the client the grounds for an appeal and the accompanying facts to support it, all of which would be part of a "huge consultation."

Immediately after the sentencing hearing, Attorney Greene recalled meeting with Petitioner's family members outside of the courtroom. He did not recall exactly who was there, but he did recall speaking with Crystal Livesay and that two or three other family members were with her. Attorney Greene detailed that they met in the witness room and that the family members were distraught. He stated that they blamed him and that he said, "Well, I'm sorry. I tried the best I could for you." Attorney Greene stated that he then talked to them about an email from the Federal Defender Services seeking to collect information about potentially close calls in career criminal cases to build a database for potential future use in the event of changes in the law. He added that he had talked to Petitioner about the database during review of the plea agreement and told Petitioner that he would be turning over his name to the Federal Defender Services to add to the database.[9] Later, on cross-examination, Attorney Greene stated that he had a number of conversations with Petitioner concerning the career criminal enhancements and the fact that Petitioner had a ten year mandatory minimum. Attorney Greene acknowledged that it was common for a defendant's family to be distraught or upset after a sentencing and stated that he tries to console them as much as he can, confessing "I'm not the most touchy feely, but I try my best." When asked whether he told the family members that Petitioner wanted to appeal and that he would file an appeal on Petitioner's behalf, Attorney Greene testified that he did not recall ever saying that.

Attorney Greene was also asked whether he received any communications from Petitioner following the sentencing hearing to check on his case or the status of an appeal, or anything of that

---

[9] Attorney Greene stated that he thought he called the Federal Defender Services and emailed Petitioner's name and case number for them to look at in the future.

15

nature.  Attorney Greene responded that he was sure he got some correspondence from Petitioner but did not recall when it was or what it was about.  He explained that he usually got correspondence from defendants letting him know where they landed in terms of a federal facility because he would ask them to do that.  He added that any correspondence from defendants typically would be in the form of a letter because he did not receive phone calls from federal facilities.  Specifically, with respect to Petitioner, Attorney Greene testified that he did not find any correspondence from Petitioner in his file and that he only assumed he received correspondence from Petitioner at some point based on the fact that "most clients do send correspondence once they land somewhere."  Attorney Greene did recall receiving a phone call from Crystal Livesay at some point long after the sentencing hearing, which he estimated could have been a year.  He testified that Ms. Livesay asked him to write a letter to the judge, stating that he lied to Petitioner.  When he told Ms. Livesay that he could not do that, she stated, "Sure you can . . . you know, just write something up and just kind of send it to the judge."  Attorney Greene responded, "Crystal, I can't do that because I didn't lie to [Petitioner] and secondly, I can't lie to the Court, I can't lie to the judge."  He further told Ms. Livesay that she had created a big conflict of interest from that point on and that he could no longer accept her calls.  He stated that he was taken aback that someone would ask him to sit down and write a letter to a judge saying he had lied to his client and that this conversation stuck in his mind because it was such an unusual request. When asked whether Petitioner had any nonfrivolous issues to raise on appeal, Attorney Greene stated that he could not find any in the file and that he obviously did not find any back at the time of sentencing because he would have discussed it with Petitioner.  On cross-examination, he acknowledged that even if in his judgment an appeal would be frivolous, he would not be relieved of the responsibility to file an appeal or to see that an appeal was filed in some fashion where a defendant requested an appeal.

## III.    STANDARD OF REVIEW

In pertinent part, 28 U.S.C. § 2255(a) permits a prisoner serving a sentence after conviction in a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, if "the sentence was imposed in violation of the Constitution."   In order to obtain relief for an alleged constitutional error, the record must reflect a constitutional error of such magnitude that it "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).   When the alleged constitutional error is ineffective assistance of counsel, the petitioner must satisfy a two-prong test, referred to as the *Strickland* test.   *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).   That is, the petitioner must show that "(1) counsel's performance was objectively unreasonable and (2) counsel's unprofessional errors prejudiced him." *Johnson v. United States*, 364 F. App'x 972, 975 (6th Cir. 2010) (citing *Strickland,* 466 U.S. at 688, 694).   "The *Strickland* test applies to claims that counsel was ineffective for failing to timely file a notice of appeal."   *Id.* (citations omitted).

In the context of an appeal, "it is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)).   In *Flores-Ortega*, the Supreme Court held that an attorney's failure to perfect a direct appeal upon his client's request is a per se Sixth Amendment violation.   *Flores-Ortega*, 528 U.S. at 477.   Therefore, if counsel "disregards specific instructions" from his client "to file a notice of appeal," a petitioner is entitled to a delayed appeal without having to show any likelihood of success on the merits.   *Id.*; *see also Regalado*, 334 F.3d at 525.   The petitioner must show "(1) counsel disregarded express instructions to file an appeal, or (2) counsel should have consulted with [the petitioner] about an appeal but didn't."   *McCormick v. United States,* 72 F.4th 130, 132 (6th Cir. 2023) (citing *Flores-*

17

*Ortega*, 528 U.S. at 477–78). But the Supreme Court has "reject[ed] a bright-line rule that counsel must always consult with the defendant regarding an appeal." *Flores-Ortega*, 528 U.S. at 480. Rather, defense counsel's obligation to consult with his client regarding an appeal depends on the totality of the circumstances. *Johnson*, 364 F. App'x at 975 (citing *Flores-Ortega,* 528 U.S. at 480).

Consultation regarding an appeal means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. If there has been a consultation, then counsel cannot be found to have acted unreasonably unless he ignored the express desire of his client to file an appeal. *Id.* In absence of a consultation, failure to consult is unreasonable if (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. "In determining whether counsel's failure to consult was reasonable, a court must consider 'all the information counsel knew or should have known.'" *Johnson*, 364 F. App'x at 975 (citing *Flores-Ortega,* 528 U.S. at 480). The factors to be considered by the reviewing court include "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* And, in cases involving a guilty plea, the court must also "consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

The Supreme Court in *Flores-Ortega* set forth a framework for analyzing these claims. First, the court must determine whether the defendant gave counsel express instructions regarding an appeal. *Flores-Ortega*, 528 U.S. at 477–788. Second, in the absence of express instructions by the defendant, the court is to consider whether counsel consulted with the defendant about an

18

appeal. *Id*. at 478. And, lastly, if there was no consultation regarding an appeal, then the court must determine whether the failure to consult was objectively reasonable. *See id.* at 478–81. The petitioner has the burden of proving his allegation of ineffective assistance of counsel by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## IV.    ANALYSIS

The Court has considered the evidentiary hearing testimony, the documents and transcripts filed in Petitioner's criminal case, and the parties' arguments and now turns to the three-part sequential analysis in accordance with *Flores-Ortega*.

### A.    Express Instructions to File an Appeal

With respect to the first inquiry, the Court must determine whether Petitioner expressly instructed Attorney Greene to file an appeal, and if so, whether Attorney Greene ignored Petitioner's instruction. On this point, the Court notes that the testimony of Petitioner and his family members were inconsistent and contradicted the testimony of Attorney Greene. As detailed above, Petitioner initially testified that he first discussed an appeal with Attorney Greene weeks before sentencing, but he could not recall the details of the conversation because a lot of time had passed and that he thought he and Attorney Green discussed the direct appeal after the sentencing. He then later testified that after hearing his sentence of 165 months, he asked Attorney Greene to do a direct appeal, and Attorney Greene responded that he would take care of it but then never came to speak with him about it. Petitioner further stated that he was not able to use a phone while in transit to the BOP facility to call Attorney Greene and check on the appeal, but then later contradicted himself in stating that he was able to use phone while in transit and had attempted to call Attorney Greene while in Atlanta but received no answer. Petitioner added that his wife also attempted to call Attorney Greene but did not get a response. He further testified that he sent a letter to Attorney Greene approximately a month after the sentencing, having learned that Attorney

19

Greene did not file the appeal and knowing he only had a year to file a § 2255 motion, and merely asked for a general "status update."

Petitioner's family members offered differing accounts of their conversation with Attorney Greene following Petitioner's sentencing. Ms. Livesay testified that Attorney Greene asked whether they wanted him to file an appeal for Petitioner to which she responded, "Yes." Ms. Helmick testified that after Attorney Greene apologized, Ms. Livesay asked him, "Well, are you going to tell them you lied or whatever?" to which Attorney Greene responded, "This conversation is over." Ms. Brooks testified that Attorney Greene apologized and then stated, "We're going to appeal this." Finally, Ms. Mullins testified that she could not remember exactly what was said but recalled Attorney Greene stating that he was going to file an appeal.

By contrast, Attorney Greene testified that Petitioner did not express an interest in filing an appeal when discussing the Plea Agreement and added that he did not recall Petitioner ever raising the issue of an appeal during his representation of him. He further testified that he did not recall Petitioner saying anything after the sentencing, only that Petitioner was at the counsel table and then taken away, as was the usual practice. Attorney Greene stated that he did not recall saying that he would take care of an appeal for Petitioner, explaining he would only make such a statement after a thorough consultation with his client, reviewing the grounds and supporting facts for an appeal. Attorney Greene further explained that when a client directs him to file an appeal, he will discuss with the client any basis for an appeal, and if meritorious, he will file an appeal within fourteen (14) days, and if without merit, he will ask the clerk to file a notice of appeal on his client's behalf.

With regard to his conversation with Petitioner's family members immediately after the sentencing, Attorney Greene testified that they were distraught and that he did apologize, stating "Well, I'm sorry. I tried the best I could for you." He also recalled advising them that he had

20

talked to Petitioner about an email from the Federal Defender Services concerning collection of information in career criminal cases for a database to be used in the future should there be changes in the law and that he would be giving Petitioner's name to be included in the database. Attorney Greene had no recollection of telling Petitioner's family members that he would file an appeal on Petitioner's behalf. As to any communications following the sentencing hearing, Attorney Greene testified that he did not find any correspondence from Petitioner in his file, but he recalled receiving a phone call from Ms. Livesay sometime after the sentencing.[10] In describing the conversation, Attorney Greene stated that Ms. Livesay asked him to write a letter to judge, stating that he lied to Petitioner. He expressed that this conversation stood out in his mind because it was very unusual and he was taken aback by the request. He testified that he told Ms. Livesay that he did not lie to Petitioner and could not lie to the Court, and further told her that he could no longer accept her calls because she had created a conflict of interest.

After considering the hearing testimony, the Court finds no indication that Attorney Greene was less than fully credible when providing his testimony and finds that Petitioner's testimony and that of his family members was only partially credible. In so finding, the Court places emphasis on the testimony provided by Attorney Greene regarding his process when a client directs him to file an appeal immediately after sentencing, which involves a fulsome consultation with the client concerning the basis for the appeal and a determination of whether the appeal was meritorious or frivolous. If there was merit to the appeal and there was agreement on all matters to be appealed, Attorney Greene stated that he would file an appeal within fourteen (14) days. In cases where Attorney Greene felt the appeal was frivolous, he stated that he would ask the clerk to file a notice

---

[10] Attorney Greene stated that his phone conversation with Ms. Livesay occurred "quite a while after sentencing," but he could not recall how long afterward, only that it seemed like a long time.

of appeal on his client's behalf. Here, Attorney Greene testified that he did not recall Petitioner ever mentioning "appeal" during his sentencing or telling Petitioner that he would take care of an appeal. Instead, Attorney Greene stated that Petitioner said nothing at all after his sentencing. Petitioner testified that Attorney Greene never consulted with him about an appeal after the sentencing, which would be consistent with Attorney Greene's practice in the case where a client did not direct any appeal be filed. Further, while Petitioner testified that he sent Attorney Greene a letter approximately a month after his sentencing asking for a "status update," he made no specific mention of having referenced any failure to file an appeal in that letter, and Attorney Greene testified that he did not have any correspondence from Petitioner in his file.

With respect to Attorney Greene's conversation with Petitioner's family members, the Court notes that the family members were not consistent in their testimony amongst themselves or with respect to their affidavits filed in support of Petitioner's § 2255 motion. First, Ms. Livesay testified that Attorney Greene asked her if the family wanted him to file an appeal for Petitioner, but this conflicts with her affidavit, which states, "Mr. Greene said [Petitioner] wanted an appeal and that the lawyer would do the appeal for [Petitioner]" [Doc. 1 p. 17]. Next, Ms. Helmick testified that during the meeting with Attorney Greene, Ms. Livesay asked him, "Well, are you going to tell them that you lied or whatever?" to which he responded, "This conversation is over." This testimony is not consistent with her affidavit, which states that Ms. Livesay confronted Attorney Greene and accused him of telling Petitioner he would not get more than 10 years, and "the attorney admitted he said that and he was 'sorry' and would do an appeal for [Petitioner]" [*Id.* at 15]. Then, Ms. Brooks testified that Attorney Greene affirmatively stated, "We're going to appeal this," which also does not fully comport with her affidavit, which states, "Attorney Greene did say that [Petitioner] wanted an appeal and that he [] would do the appeal for [Petitioner]" [*Id.* at 18]. Finally, Ms. Mullins, who testified at the hearing that she did not recall exactly everything

22

that was said in the conversation with Attorney Greene, gave a detailed affidavit in which she stated, "[Attorney Greene] acknowledged the fact that [Petitioner] wanted an appeal and we all believed [A]ttorney Greene would file an appeal after the sentencing" [*Id.* at 19]. This is inconsistent with her hearing testimony that "Attorney Greene stated that he was going to file an appeal."

Here, Attorney Greene's detailed accounting of the process he follows in consulting with a client who expressly instructs him to file an appeal and his recollection of Petitioner's silence after his sentencing provides a logical explanation for Attorney Greene's lack of a consultation with Petitioner immediately following the sentencing hearing as well as the lack of any correspondence from Petitioner concerning an appeal in his client file. By contrast, the testimony of Petitioner and his family members is both inconsistent and contradictory such that the Court finds it paints a less logical and coherent picture. The only evidence Petitioner offers other than his own contention that he directed Attorney Greene to file an appeal is the testimony of his family members, who did not witness any conversation between Petitioner and Attorney Greene at the sentencing hearing and offered differing accounts of what Attorney Greene said to them afterwards, which the Court finds lacking in credibility for the reasons previously stated.

Given the testimony taken as a whole and the logical conclusions to be gleaned therefrom, the Court cannot find that Petitioner, either personally or through a family member, expressly instructed Attorney Greene to file an appeal.

### B. Consultation Regarding An Appeal

Having determined that Petitioner did not expressly instruct Attorney Greene to file an appeal, the Court must next determine whether Attorney Greene consulted with Petitioner regarding an appeal, and if not, whether such failure to consult was objectively reasonable. Here, it is uncontroverted that Attorney Greene did not consult with Petitioner about an appeal following

23

his sentencing hearing.  The Court will therefore analyze whether Attorney Greene's failure to consult with Petitioner about an appeal was objectively reasonable.

### C.     Duty to Consult

As mentioned above, there is no bright-line rule that requires defense counsel in every case to consult with his client regarding an appeal after a sentencing.  *Flores-Ortega*, 528 U.S. at 480. Rather, there is a constitutional duty to consult with a defendant about an appeal "when there is reason to think either (1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  *Id.*

The Court in *Flores-Ortega* listed three factors for courts to consider when analyzing the reasonableness of an attorney's failure to consult with his client about an appeal after his sentencing.  The first is "whether the conviction follows a trial or guilty plea."  *Id.*  This factor is "highly relevant" because  "a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."  *Id.*  If a guilty plea was entered, the remaining factors are  "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Here, all three factors weigh in favor of the reasonableness of Attorney Greene's failure to consult with Petitioner.  Petitioner entered a Plea Agreement with the Government, in which Petitioner agreed to plead guilty to Count One of the second superseding indictment [Crim. Docket, Doc. 160 p. 1].  The Court, in turn, accepted Petitioner's plea agreement and adjudicated that Petitioner was guilty of Count 1 of the Superseding Indictment [Crim. Docket, Doc. 560 p. 1]. Petitioner's guilty plea is highly relevant to the extent it potentially reduced the appealable issues

24

and indicated that Petitioner sought an end to the judicial proceedings. The remaining factors confirm this to be true here.

As to the second factor, Petitioner received the sentence bargained for as part of his plea agreement. The Plea Agreement stated that Petitioner would be exposed to a ten-year mandatory minimum term of imprisonment and up to life [Crim. Docket, Doc. 160 p. 1]. The Court ultimately imposed a sentence of 165 months [Crim. Docket, Doc. 560 p. 2]. While Petitioner was sentenced as a career offender, the Court took into consideration Petitioner's substantial assistance and granted the Government's motion for downward departure, which correlated to a revised guideline sentence of 168 months. The Court then went slightly beyond the recommendation and imposed a lower sentence of 165 months. Given Petitioner's guilty plea and low-end guideline range sentence in the face of a minimum ten (10) years to life, such circumstance would lead Attorney Greene to believe that Petitioner had sought and received an end to his proceeding without reason to think Petitioner would want to appeal.

Petitioner asserts that he expected to receive a sentence of half the mandatory minimum based on a representation made by Attorney Greene. As previously noted, however, Paragraph 5(c) of the Plea Agreement provides that any estimate of potential sentence by defense counsel or any other person is not binding on the Court and may not serve as a basis to rescind the plea agreement or withdraw a plea of guilt. Thus, even assuming Attorney Greene made any estimation of a potential sentence, Petitioner's review of Paragraph 5(c) and his acceptance of the Plea Agreement indicated his understanding that it was not binding on the Court. As further discussed below, Attorney Greene testified to his detailed process of reviewing plea agreements with his clients and his confirmation that he would have discussed paragraph 5(c) of the Plea Agreement with Petitioner.

Finally, as to the third factor, the Court takes into account that Petitioner waived his right to a direct appeal as part of his plea agreement, with the exception of retaining his right to appeal a sentence imposed by the Court above the sentencing guideline range [Crim. Docket, Doc. 160 p. 6]. As previously reviewed, Attorney Greene testified that he would have read the entire Plea Agreement to Petitioner verbatim and reviewed paragraph 9, addressing the appeal waiver. In this regard, Attorney Greene emphasized the review of the appeal waiver with his clients because "they are relinquishing significant rights when they sign a plea agreement." While Petitioner testified that Attorney Greene did not review the waiver provision of the Plea Agreement with him, Petitioner later contradicted himself by stating Attorney Greene had explained the terms of the Plea Agreement to him, although Petitioner stated that he did not agree to the term waiving his right of direct appeal.

That Petitioner reviewed and understood the waiver of his appeal rights is further evidenced by his statements under oath at the plea hearing. At the hearing, the Court thoroughly reviewed the waiver of his appeal rights with him, and Petitioner testified that he understood that waiver. Petitioner claims that he only agreed with anything Judge Varlan said because Attorney Greene had threatened him from pulling his plea by stating he would be put in prison for life, but there is no support other than Petitioner's testimony—which the Court has found not fully credible. Consequently, the Court finds that prior to sentencing, Attorney Greene explained Petitioner's appeal rights to him and the consequences of giving up those appeal rights by entering into a plea agreement. Further, Petitioner accepted the Plea Agreement indicating his desire to relinquish his appeal rights, and because the Court sentenced Petitioner at the low end of the applicable guideline range, no appeal waiver exception applied.

The Court finds that under these circumstances, Petitioner has not alleged sufficient facts to show that a rational defendant would have wanted to appeal or that Petitioner reasonably

26

demonstrated to counsel that he was interested in appealing. In this instance, Petitioner was convicted following a plea agreement. Petitioner, in turn, received the sentence that he bargained for under the Plea Agreement and waived his direct appeal rights with the exception of appealing a sentence above the guideline range, which did not occur here. Moreover, while Petitioner may not have received as much of a reduction in his sentence for his cooperation as anticipated or desired, he did receive a significant reduction, even beyond that recommended in the PSR. Based on the totality of the circumstances, the Court finds that counsel's duty to consult about filing an appeal was not triggered following the sentencing hearing. *Shaw v. United States*, 498 F. Supp. 3d 944, 956 (E.D. Mich. 2020) (finding that under the totality of the circumstances, counsel's duty to consult was not triggered where petitioner pleaded guilty to one of the nine charges which lowered the guideline range, petitioner received a sentence at the lowest end of the guideline range, and petitioner expressly waived his appeal rights); *United States v. Washington*, No. 2:11–CR–20248, 2013 WL 8178395, at *11 (E.D. Mich. Sept. 5, 2013) *report and recommendation adopted*, No. 10-20202, 2014 WL 1304315 (E.D. Mich. Mar. 31, 2014) (finding that counsel was not ineffective for failing to consult with defendant regarding an appeal where, among other things, the plea agreement contained an appeal waiver and the agreement was explained at the plea colloquy); *see also Flores-Ortega*, 528 U.S. at 479–80 ("[I]t would be difficult to say" that counsel's failure to consult was "professionally unreasonable" where "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult.").

## V.     CERTIFICATE OF APPEALABILITY

Lastly, the Court has considered whether the District Judge should issue a certificate of appealability on the final issue remaining in the § 2255 motion, which will be necessary for Petitioner to appeal the Court's ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a

27

certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not find that dismissal of Petitioner's claim for ineffective assistance of council is debatable or wrong, as Petitioner has not made a substantial showing that he was denied a constitutional right. The Court therefore **RECOMMENDS** no certificate of appealability be issued.

## VI. CONCLUSION

For the reasons expressed herein, the Court **RECOMMENDS**[11] that the District Judge **DENY** the sole remaining claim in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [**Doc. 1**] regarding Petitioner's claim that Attorney Greene failed to file an appeal as directed or consult with Petitioner and that no certificate of appealability be issued.

Respectfully submitted,

Debra C. Poplin
Debra C. Poplin
United States Magistrate Judge

---

[11] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

28